UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

JAMES WHITLOW DELANO,

                              Plaintiff,                    Case No. 2:19-cv-02811 (DLR)

          - against -


ROWLAND NETWORK COMMUNICATIONS, LLC

                              Defendant.


**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS THE AMENDED COMPLAINT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................... V

PRELIMINARY STATEMENT ................................................................................. 1

UNCONTROVERTED FACTS ................................................................................. 2

LEGAL STANDARD ................................................................................................. 4

ARGUMENT ............................................................................................................. 5


POINT I:    DEFENDANT FAILS TO ESTABLISH ITS STATUTE OF LIMITATIONS
            DEFENSE AS A MATTER OF LAW .................................................... 5

A.    THERE IS NO DISPUTE THAT SUIT WAS FILED WITHIN THREE YEARS OF ACTUAL
      DISCOVERY ..................................................................................................... 5

B.    QUESTIONS OF CONSTRUCTIVE KNOWLEDGE SHOULD BE RESOLVED BY THE FACT-FINDER 6

C.    A PHOTOGRAPHER DOES NOT HAVE A GENERAL DUTY TO POLICE THE INTERNET ............. 6

D.    THERE IS NO EVIDENCE OF "STORM WARNINGS" CONCERNING THE PHOTOGRAPH AT ISSUE
      IN THIS LAWSUIT ........................................................................................... 8


POINT II:    PLAINTIFF HAS ADEQUATELY PLED A COPYRIGHT INFRINGEMENT
             CLAIM ................................................................................................. 9

A.    PLAINTIFF OWNS A VALID COPYRIGHT ................................................ 9

B.    DEFENDANT COPIED THE PHOTOGRAPH WITHOUT AUTHORIZATION ..................... 10


POINT III:    THE FAIR USE DEFENSE SHOULD BE DISMISSED AS FRIVOLOUS ....... 11

A.    THE FIRST FACTOR WEIGHS HEAVILY AGAINST FAIR USE ................................. 12

(1)    Defendant's Secondary Use is NOT Transformative ........................................... 12

(a)    The Newsworthiness of the Photograph is Not Dispositive ................................. 13

(b)    The Infringing Article is Purely Descriptive and Did Not Report on Any
       Controversy that Arose Because of the Photograph Itself .................................... 14

(c)    Defendant Has Not Transformed the Original Intended Use of the Photograph;
       Nor Altered Its Meaning ..................................................................................... 15

(2)    *Defendant's Use is Commercial Rather Than Non-Profit* .................................. 16

B.  THE SECOND FACTOR WEIGHS AGAINST FAIR USE ....................................................... 16

C.  THE THIRD FACTOR WEIGHS AGAINST FAIR USE BECAUSE DEFENDANT PUBLISHED A
    FULL-COLOR, FULL-SCALE REPRODUCTION OF THE IMAGE WITHOUT ALTERATION .. 17

D.  THE FOURTH FACTOR WEIGHS AGAINST FAIR USE BECAUSE THERE WAS ACTUAL
    MARKET HARM AS WELL AS HARM TO THE POTENTIAL MARKET ............................. 18

POINT IV:    THE DE MINIMIS DEFENSE FAILS ................................................................. 20

POINT V:    ANY SERVICE DEFECT CAN BE READILY CURED AND DOES NOT
             REQUIRE DISMISSAL ........................................................................ 22

CONCLUSION ................................................................................................... 22

# TABLE OF AUTHORITIES

## CASES

*Ajaxo, Inc. v. Bank of America Technology and Operations, Inc.*,
  625 F.Supp.2d 976, 982 (E.D.Cal.2008) ............................................................... 6

*Arpin v. Santa Clara Valley Transp. Agency*,
  261 F.3d 912, 925 (9th Cir. 2001) ........................................................................ 4

*Ashcroft v. Iqbal*,
  556 U.S. 662, 678 (2009) ...................................................................................... 9

*Associated Press v. Meltwater U.S. Holdings*,
  931 F.Supp.2d 537, 551 (S.D.N.Y. 2013) ...................................................... 15, 18

*Barcroft Media, Ltd. v. Coed Media Group, LLC*,
  No. 16-cv-7634 (JMF), 2017 WL 5032993 (S.D.N.Y. Nov. 2, 2017) ............................. passim

*Beidleman v. Random House, Inc.*,
  621 F. Supp. 2d 1130 (D. Colo. 2008) ................................................................... 6

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544, 570 (2007) ...................................................................................... 9

*Benak ex rel. Alliance Premier Growth Fund v. Alliance Capital*,
  435 F.3d 396, 400 (3d Cir.2006) ........................................................................... 8

*Blanch v. Koons*,
  467 F.3d 244, 251 (2d Cir. 2006) ................................................................... 12, 17

*Browne v. McCain*,
  611 F.Supp.2d 1073, 1078 (C.D. Cal. 2009) ......................................................... 4

*BWP Media USA, Inc. v. Gossip Cop Media, Inc.*,
  196 F.Supp.3d 395, 401 (S.D.N.Y. 2016) ("Gossip Cop") .................................... 10

*Cable/Home Commc'n Corp. v. Network Prods., Inc.*,
  902 F.2d 829, 845 (11th Cir.1990) ...................................................................... 19

*Cahill v. Liberty Mut. Ins. Co.*,
  80 F.3d 336, 337-38 (9th Cir. 1996) ..................................................................... 4

*Campbell v. Acuff– Rose Music, Inc.*,
  510 U.S. 569, 579 (1994) .................................................................................... 12

*Castle Rock Entm't, Inc. v. Carol Publ'g Group, Inc.,*
  150 F.3d 132, 137 (2d Cir. 1998) ........................................................................9-10

*Design Basics, LLC v. Chelsea Lumber Co.,*
  977 F.Supp.2d 714, 725 (E.D.Mich.2013) ................................................................. 7

*Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.,*
  307 F.3d 197, 208 (3d Cir. 2002) ............................................................................ 21

*Dyer v. V.P. Records Retail Outlet, Inc.,*
  No. 05 Civ. 6583 (WHP), 2008 WL 2876494, at *4 (S.D.N.Y. July 24, 2008) ...................... 21

*Eclaire Advisor Ltd. v. Daewoo Engineering Co.,*
  375 F.Supp.2d 257, 260 (S.D.N.Y. 2005) ................................................................... 9

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,*
  499 U.S. 340, 361 (1991) ..................................................................................... 9

*Ferdman v. CBS Interactive, Inc.,*
  17-cv-1317 (PGG), 2018 WL 4572241, *19 (S.D.N.Y. Sept. 21, 2018) ............................. 19

*Fitzgerald v. CBS Broadcasting,*
  491 F.Supp.2d 177, 189 (D. Mass. 2007) ................................................................ 19

*Fonar Corp. v. Domenick,*
  105 F.3d 99, 105 (2d Cir. 1997) ............................................................................ 10

*Four Navy Seals v. Associated Press,*
  413 F. Supp.2d 1136, 1148 (S.D. Cal. 2005) .............................................................. 4

*Frerck v. John Wiley & Sons, Inc.,*
  No. 11–cv–2727, 2014 WL 3512991 at *6 (N.D.Ill. July 14, 2014) .................................... 7

*Gal v. Viacom Intern., Inc.,*
  518 F.Supp.2d 526, 537 (S.D.N.Y. 2007) ................................................................. 11

*Grant Heilman Photography, Inc. v. McGraw-Hill Companies, Inc.,*
  No. CIV.A. 12-2061, 2012 WL 5944761, at *3 (E.D. Pa. Nov. 28, 2012) .............................. 8

*Greenberg v. Hiner,*
  359 F. Supp.2d 675, 682 (N.D. Ohio 2005) ............................................................... 8

*Harper & Row v. Nation Enterprises,*
  471 U.S. 539, 557 (1985) ............................................................................passim

*Hirsch v. Complex Media, Inc.*,
   No. 18-cv-5488 (CM), 2018 WL 6985227, at *6 (S.D.N.Y., December 10, 2018)................. 14

*Infinity Broadcast Corp. v. Kirkwood*,
   150 F.3d 104, 108 & n. 2 (2d Cir. 1998)..................................................................... 15

*Island Software & Computer Serv., Inc. v. Microsoft Corp.*,
   413 F.3d 257 (2d Cir. 2005)...................................................................................... 10

*Knitwaves, Inc. v. Lollytogs Ltd. (Inc.)*,
   71 F.3d 996, 1002 (2d Cir. 1995)............................................................................... 20

*Konangataa v. Am. Broadcasting Companies, Inc.*,
   No. 16-CV-7382 (LAK), 2017 WL 2684067, at *1 (S.D.N.Y. June 21, 2017)...................... 14

*Mackie v. Hipple*,
   No. C09-0164RSL, 2010 WL 3211952, at *2 (W.D. Wash. Aug. 9, 2010) ........................... 7

*Masi v. Moguldom Media Grp. LLC*,
   No. 18 CIV. 2402 (PAC), 2019 WL 3287819, at *1 (S.D.N.Y. July 22, 2019) ...................... 6

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
   521 F.3d 1097, 1104 (9th Cir. 2008)............................................................................. 4

*Miroglio S.P.A. v. Conway Stores, Inc.*,
   No. 5-cv-00121 (BSJ), 2007 WL 391565, *6 (S.D.N.Y. Feb. 6, 2007)................................ 11

*Monster Communications, Inc. v. Turner Broadcasting*,
   935 F.Supp. 490, 494 (S.D.N.Y. 1996).......................................................................... 17

*Murphy v. Millennium Radio Grp. LLC*,
   650 F.3d 295, 307 (3d Cir. 2011)................................................................................. 13

*Nunez v. Caribbean Int'l News Corp.*,
   235 F.3d 18, 25 (1st Cir. 2000) ................................................................................... 14

*NXIVM Corp. v. Ross Inst.*,
   364 F.3d 471, 478 (2d Cir. 2004)................................................................................. 12

*Polar Bear Prods., Inc. v. Timex Corp.*,
   384 F.3d 700, 706 (9th Cir.2004).................................................................................. 5

*Psihoyos v. John Wiley & Sons, Inc.*,
   748 F.3d 120 (2d Cir. 2014).......................................................................................... 5

*Psihoyos v. National Examiner*,
No. 97-cv-7624 (JSM), 1998 WL 336655, *3 (S.D.N.Y. June 22, 1998) .............................. 13

*Ringgold v. Black Entertainment Television, Inc.*,
126 3d 70, 79 (2d Cir. 1997) ........................................................................................ 12

*Roley v. New World Pictures, Ltd.*,
19 F.3d 479, 481 (9th Cir.1994) ..................................................................................... 5

*Roy Export Co. Establishment of Vaduz, Liechtenstein*,
503 F.Supp. 1137, 1144 (2d Cir. 1980) ........................................................................... 1

*Russell v. Landrieu*,
621 F.2d 1037, 1039 (9th Cir. 1980) ............................................................................... 4

*Scholz Design, Inc. v. Sard Custom Homes, LLC*,
691 F.3d 182, 186 (2d Cir. 2012) .................................................................................. 10

*Sony Corp. of America v. Universal City Studios, Inc.*,
464 U.S. 417, 450 (1984) ............................................................................................. 18

*Stewart v. Abend*,
495 U.S. 207 (1990) .................................................................................................... 12

*Swatch Group Management Services Ltd. v. Bloomberg L.P.*,
756 F.3d 73, 85 (2d Cir. 2014) ..................................................................................... 13

*Twentieth Century Fox Film Corp. v. Marvel Enterprises, Inc.*,
155 F. Supp. 2d 1, 46 (S.D.N.Y. 2001), remanded on other grounds, 277 F.3d 253 (2d Cir.
2002) ........................................................................................................................ 21

*U.S. v. Livecchi*,
711 F.3d 345, 352 (2d Cir. 2013) ................................................................................... 5

*Whimsicality, Inc. v. Rubie's Costume Co., Inc.*,
891 F.2d 452, 455 (2d Cir. 1989) .................................................................................. 10

*Wu v. John Wiley & Sons, Inc.*,
No. 14 CIV. 6746 AKH AJP, 2015 WL 5254885, at *6 (S.D.N.Y. Sept. 10, 2015) ................. 7

## STATUTES

17 U.S.C. § 107 .......................................................................................................... 12
17 U.S.C. § 410(c) ...................................................................................................... 10
17 U.S.C. § 507(b) ........................................................................................................ 5

## PRELIMINARY STATEMENT

**"The fair use doctrine is not a license for corporate theft, empowering a court to ignore a copyright whenever it determines the underlying work contains material of possible public importance."**

- *Roy Export Co. Establishment of Vaduz, Liechtenstein*, 503 F.Supp. 1137, 1144 (2d Cir. 1980)

This is a willful copyright infringement action involving a major media company's unauthorized use of a copyrighted photograph of the U.S.-Mexico border (the "Photograph").

Plaintiff James Whitlow Delano ("Plaintiff" or "Delano") is a professional Photographer in the business of licensing his photographs to media outlets.  Defendant Rowland Network Communications, LLC ("Defendant" or "Rowland") is a largescale, sophisticated news publisher which expropriated Plaintiff's photograph without his authorization.

On its motion to dismiss, Defendant has interposed the defenses of statute of limitations, failure to state a claim, fair use under 17 U.S.C. §107, de minimis use, and improper service.

With respect to the statute of limitations, Defendant has failed to establish this defense on the face of the pleadings.  Plaintiff actually discovered the infringement in September 2017, well within the three-year statute of limitations period prescribed by the Copyright Act.  Moreover, Defendant has failed to establish as a matter of law that Plaintiff should have discovered the infringement sooner. Instead, Defendant relies on speculative assertions, based on allegations which reside outside of the pleadings, pertaining to "reverse Google image search."

As to pleading the claim for infringement, Plaintiff readily alleges facts to render his infringement action sufficient, namely: (1) ownership of a valid copyright; and (2) copying without authorization.

The fair use defense is objectively unreasonable given that there is no transformative

effect when a secondary user republishes the Photograph to illustrate a news story about the subject matter depicted in the Photograph. Defendant's use also usurped a fully functioning licensing market for the work as Plaintiff licensed his Photograph to other media outlets.

If Defendant's practice of shoplifting photographs from other licensed users were permitted, it would relegate photojournalists to a single licensing fee and would allow every other publisher to free-ride off the labor of that author's copyright. News organizations would also be less likely to bear the expense of dispatching its own photojournalists to cover newsworthy events, thereby frustrating the Copyright Act's purpose of maximizing the quantity and quality of works available to the public. As such, the fair use defense should be dismissed as matter law.

Defendant's *de minimis* defense fares no better. The Photograph was used in full color and full-scale, directly below the headline to Defendant's article, and was substantively material to the message conveyed by the Defendant's news article.

Finally, any technical service issue can be readily cured and does not require dismissal of the action, particularly as Defendant has appeared to defend the action.

## <u>UNCONTROVERTED FACTS</u>

Delano is a professional photographer in the business of licensing his photographs to online and print media for a fee. [Dkt. # 20, Amended Complaint ("Am. Compl.") ¶ 5] Defendant Rowland is a sophisticated, for-profit media company in the business of publishing news. [Am. Compl. ¶ 9-10]. At all relevant times, Rowland owned and operated a website at the URL: www.Midnightinthedesert.com (the "Website"). [Am. Compl. ¶ 8].

Delano photographed the US-Mexico border (the "Photograph"). [Am. Compl. ¶ 11, Ex. A]. Delano exercised personal and creative choices in photographing the subject matter of the

Photograph, including the selection of subject matter, the timing of when the photograph was taken, perspective, angle, depth, selection of camera equipment, filtered lens. Delano also performed post-production editing on the Photograph. [Am. Compl. ¶ 12]  Delano then licensed the Photograph to various media outlets. [Am. Compl. ¶ 13]  Delano is the author of the Photograph and has at all times been the sole owner of all right, title and interest in and to the Photograph, including the copyright thereto. [Am. Compl. ¶ 14]  The Photograph was registered with the United States Copyright Office and was given registration number VA 2-070-144, with effective date of September 29, 2017. [Am. Compl. ¶ 15]

Rowland ran an article on the Website entitled This is What the U.S.-Mexico Border Wall Actually Looks Like. See URL: http://midnightinthedesert.com/u-s-mexico-borderwall-actually-looks-like/. (the "Infringing Article"). [Am. Compl. ¶ 16]. The Infringing Article featured the Photograph in full color and full-scale, directly above the headline. [Am. Compl. ¶ 16]

Rowland did not license the Photograph from Plaintiff for its article, nor did Rowland have Plaintiff's permission or consent to publish the Photograph on its Website. [Am. Compl. ¶ 17]  Rowland's Infringing Article did not comment on or criticize the merits of the Photograph; nor did the Infringing Article comment on any political or social controversy surrounding the very existence of the Photograph. [Am. Compl. ¶ 18]   Instead, the Infringing Article merely uses the Photograph to illustrate what the U.S.-Mexico Border Wall looks like. [Am. Compl. ¶ 18] Because Rowland used the Photograph of the U.S.-Mexico Border Wall to illustrate a news story about what the U.S.-Mexico Border Wall looks like, such illustrative use is not transformative. [Am. Compl. ¶ 19] There was a fully functioning licensing market for the Photograph at the time Rowland re-published the Photograph on its Website. [Am. Compl. ¶ 20]

On or about September 12, 2017, Plaintiff first became aware of the use of the

Photograph on Defendant's Website. [Am. Compl. ¶ 21]  Before September 2017, Plaintiff was

not aware that any third party had used the Photograph on-line without his authorization. [Am.

Compl. ¶ 22]

## LEGAL STANDARD

In deciding a Rule 12(b)(6) motion like the present one, the court must assume

allegations in the challenged complaint are true, and construe the complaint in the light most

favorable to the non-moving  party.  *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th

Cir. 1996).  The court may not consider facts outside the complaint.  *Arpin v. Santa Clara Valley

Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).  The court may not dismiss "unless it appears

beyond doubt that the plaintiff can prove no set of facts in support of his claim which would

entitle him to relief."  *Russell v. Landrieu*, 621 F.2d 1037, 1039 (9th Cir. 1980).  Dismissal is

appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to

support a cognizable legal theory.  *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097,

1104 (9th Cir. 2008).

Courts analyze fair use as a mixed question of law and fact.  *Harper & Row, Publishers,

Inc. v. Nation Enters.*, 471 U.S. 539, 560 (1985).  As a consequence, in order to undertake the

fair use analysis, a court usually must make factual findings.  *Harper & Row Publishers, Inc.,*

471 U.S. at 560.  However, because a Rule 12(b)(6) motion arises at the pleading stage, a court

does not make factual findings, nor deem material facts undisputed or admitted.  *Browne v.

McCain*, 611 F.Supp.2d 1073, 1078 (C.D. Cal. 2009).

Consequently, in light of the court's narrow inquiry in connection with a Rule 12(b)(6)

motion and limited access to all potentially relevant and material facts needed to undertake the

analysis, courts rarely analyze fair use on a 12(b)(6) motion. *See id*; *see also Four Navy Seals v.

Associated Press*, 413 F. Supp.2d 1136, 1148 (S.D. Cal. 2005).

## ARGUMENT

**POINT I:**     **DEFENDANT FAILS TO ESTABLISH ITS STATUTE OF LIMITATIONS DEFENSE AS A MATTER OF LAW**

Based on the face of the pleadings, Defendant asks the Court to rule on its affirmative defense of statute of limitations without providing a scintilla of evidence to support this defense.

The Copyright Act provides that "[n]o civil action shall be maintained under the [Act] unless it is commenced within three years after the claim accrued." 17 U.S.C. § 507(b).  An infringement claim does not accrue until the copyright holder discovers, or with due diligence should have discovered, the infringement.  *Roley v. New World Pictures, Ltd.*, 19 F.3d 479, 481 (9th Cir.1994) ("the term 'accrue,' as it is used in § 507(b), [is] to be the moment when the copyright holder 'has knowledge of a violation or is chargeable with such knowledge.'"); *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 706 (9th Cir.2004) (holding that "[b]ecause [plaintiff] did not discover [defendant's] infringement until within three years of filing suit, [plaintiff] may recover damages for infringement that occurred outside of the three-year window"); *see also Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120 (2d Cir. 2014) ("We agree with our sister Circuits that the text and structure of the Copyright Act . . . evince Congress's intent to employ the discovery rule, not the injury rule.").  Thus, "copyright infringement claims do not accrue until actual or constructive discovery of the relevant infringement." *Id.*  A defendant bears the burden of proof when raising a statute of limitations argument as an affirmative defense in the face of a copyright infringement claim.  *U.S. v. Livecchi*, 711 F.3d 345, 352 (2d Cir. 2013).

### A.     THERE IS NO DISPUTE THAT SUIT WAS FILED WITHIN THREE YEARS OF ACTUAL DISCOVERY

Plaintiff did not actually discover his infringement claim against Defendant until September 12, 2017 [Am. Compl. ¶ 21]  This case was filed on May 2, 2019, within three years of Plaintiff's actual discovery of Defendant's infringing conduct.  [Dkt. #1]  Thus, absent any evidence to the contrary, the statute of limitations defense fails with respect to any theory of actual discovery.

**B.    QUESTIONS OF CONSTRUCTIVE KNOWLEDGE SHOULD BE RESOLVED BY THE FACT-FINDER**

Defendant avers that the Court should impose constructive knowledge upon Plaintiff as a matter of law without any factual evidence on record.  However, federal courts have held that summary adjudication is inappropriate where the parties dispute the date upon which a plaintiff's claims accrue under the discovery rule.  *See, e.g., Ajaxo, Inc. v. Bank of America Technology and Operations, Inc.,* 625 F.Supp.2d 976, 982 (E.D.Cal.2008) (denying summary judgment where "[g]enuine issues of disputed material facts exist as to when each Plaintiff learned or could have learned about the existence of its copyright infringement claims."); *Beidleman v. Random House, Inc.*, 621 F. Supp. 2d 1130 (D. Colo. 2008) (genuine issues of fact existed as to when a reasonably prudent person would have discovered alleged infringement, precluding summary judgment for publisher).

As such, because the parties dispute when a reasonable person in Plaintiff's position should have discovered Defendant's infringement, and because the parties have not had the opportunity to conduct factual discovery, the Court's resolution of this issue on Rule 12 would be premature.

**C.    A PHOTOGRAPHER DOES NOT HAVE A GENERAL DUTY TO POLICE THE INTERNET**

As Judge Crotty recently affirmed in *Masi v. Moguldom Media Grp. LLC*, No. 18 CIV. 2402 (PAC), 2019 WL 3287819, at *1 (S.D.N.Y. July 22, 2019), a photographer does not have a

general duty to police the internet for copyright infringements. *Masi* at *5 ("[plaintiff] did not have knowledge of any infringement of his work and there was no reason for him to think, or duty for him to scour the internet to find out if, anyone was using his photographs without his consent.") (*citing Wu v. John Wiley & Sons, Inc.*, No. 14 CIV. 6746 AKH AJP, 2015 WL 5254885, at *6 (S.D.N.Y. Sept. 10, 2015) (*"*knowledge about publishers generally is not sufficient to constitute constructive discovery of infringement")); *see also Frerck v. John Wiley & Sons, Inc.,* No. 11–cv–2727, 2014 WL 3512991 at *6 (N.D.Ill. July 14, 2014) ("Defendant claims that Plaintiff should have seen articles generally describing textbook publishers' copyright infringements of photographers' images and that such articles constitute 'storm warnings' triggering a duty to investigate Defendant's use of his work . . . . [A]n article identifying an issue in the publishing industry generally did not obligate Plaintiff to go through 19 years of licenses to preserve his copyright infringement claims. If that were the expectation, then stock photo agencies and photographers likely would spend more money monitoring their licenses than they receive from issuing licenses."); *Design Basics, LLC v. Chelsea Lumber Co.,* 977 F.Supp.2d 714, 725 (E.D.Mich.2013) ("The Court . . . rejects Defendants' argument that Plaintiff was under a continuous duty to police its copyright and concludes that Defendants have not pointed to evidence of any storm warnings that would reasonably have put Plaintiff on inquiry notice of the claimed infringement more than three years prior to filing suit."); *Mackie v. Hipple*, No. C09-0164RSL, 2010 WL 3211952, at *2 (W.D. Wash. Aug. 9, 2010) ("[Defendant] presents no case law indicating that [Plaintiff] had an affirmative duty to police the internet and stock photography agencies to find infringing copies of his work . . . . a sculptor would have no similar duty to scan the internet for all possible photographic infringers simply because her work has been infringed in the past").

7

Here, Defendant's argument that photographers such as Plaintiff must expend substantial time and resources to comb the World Wide Web's millions of websites for unauthorized use is meritless.  Photographers spend their time taking photographs, editing their photos, marketing their work and collecting licensing fees.  The above-cited authorities make clear that no general duty exists for copyright holders to police the internet as an ordinary business practice.

Finally, Defendant's argument that Plaintiff should have found the infringement faster with "reverse-image Google search" is entirely speculative and not supported by any record evidence, including expert testimony or documentary evidence.

**D.     THERE IS NO EVIDENCE OF "STORM WARNINGS" CONCERNING THE PHOTOGRAPH AT ISSUE IN THIS LAWSUIT**

Constructive knowledge may only be imposed where "storming warnings give rise to the duty to investigate." *Greenberg v. Hiner*, 359 F. Supp.2d 675, 682 (N.D. Ohio 2005). The test for storm warnings is "objective," based on what a reasonable person in the plaintiff's position would have perceived.  *Grant Heilman Photography, Inc. v. McGraw-Hill Companies, Inc.,* No. CIV.A. 12-2061, 2012 WL 5944761, at *3 (E.D. Pa. Nov. 28, 2012) (*citing Benak ex rel. Alliance Premier Growth Fund v. Alliance Capital,* 435 F.3d 396, 400 (3d Cir.2006)).

Here, Defendant has failed to present any evidence of "storm warnings" of infringing uses with respect to the Photograph at issue in this case.  Indeed, Defendant has failed to cite any another instances of infringement of the Photograph at issue.  Defendant has failed to identify any triggering event or "storm warning" that would have caused Plaintiff to investigate unauthorized uses of tge Photograph specifically.

A jury could find that no reasonable person in Plaintiff's position could have discovered Defendant's infringement any earlier than it actually did in Spetember 2017.  Defendant's assertion that Google's "reverse image search" can be utilized to easily locate infringements is a

complete fallacy.  [D's Memo, Dkt. #24, p. 6 of 18]. The algorithms are constantly changing and

each search may produce disparate results, particularly over time.  In any event, whether reverse

image search can effectively locate infringements is a question of fact, or a matter of expert

testimony, that should not be resolved on Rule 12.

**POINT II:**     **PLAINTIFF HAS ADEQUATELY PLED A COPYRIGHT**
              **INFRINGEMENT CLAIM**

Next, Defendant argues that Plaintiff has failed to state a claim for infringement based on

speculation that National Geographic, rather than Plaintiff, owns the copyright.  [D's Memo,

Dkt. # 24, p. 7 of 18]

A defense based on failure to state a claim must be directed to the pleading.  *See Eclaire*

*Advisor Ltd. v. Daewoo Engineering Co.*, 375 F.Supp.2d 257, 260 (S.D.N.Y. 2005).  A

complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Here, Plaintiff's complaint sets forth a plausible set of facts to support each element of

his copyright infringement claim. To establish a claim of copyright infringement, plaintiff must

show two elements: (1) ownership of a valid copyright; and (2) unauthorized copying of the

copyrighted work.  *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *Castle*

*Rock Entm't, Inc. v. Carol Publ'g Group, Inc.*, 150 F.3d 132, 137 (2d Cir. 1998).

**A.**     **PLAINTIFF OWNS A VALID COPYRIGHT**

"A certificate of registration from the U.S. Register of Copyrights constitutes prima

facie evidence of the certificate holder's copyright ownership, as well as of the truth of the facts

stated in the registration." *BWP Media USA, Inc. v. Gossip Cop Media, Inc.*, 196 F.Supp.3d 395, 401 (S.D.N.Y. 2016) ("Gossip Cop") (citing 17 U.S.C. § 410(c)).  A certificate of copyright registration is prima facie evidence of both valid ownership of copyright and originality.  *Scholz Design, Inc. v. Sard Custom Homes, LLC*, 691 F.3d 182, 186 (2d Cir. 2012).  To be timely, a certificate of registration must be obtained "before or within five years after first publication" of a work.  *Island Software & Computer Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257 (2d Cir. 2005).

Here, Plaintiff created the Photographs. [Am Compl. ¶ 12, 14]  Plaintiff is in possession of a certificate of Registration from the Copyright Office. [Am. Compl. ¶ 15]  There is no dispute that said Registration was obtained within five years after first publication of the work.  Accordingly, the Registration serves as prima facie evidence of Plaintiff's valid copyright ownership in the Photograph.  *Whimsicality, Inc. v. Rubie's Costume Co., Inc.*, 891 F.2d 452, 455 (2d Cir. 1989).  "The validity of a registration may be rebutted by proof of a certificate holder's fraud on the Copyright Office, though the party seeking to establish such fraud bears a 'heavy burden.'"  *Gossip Cop*, 196 F.Supp.3d at 401 (citation omitted).  *See also Fonar Corp. v. Domenick*, 105 F.3d 99, 105 (2d Cir. 1997) ("the presumption [of validity] may be overcome only by 'proof of deliberate misrepresentation.'").  Here, Defendant has failed to produce any evidence that Plaintiff defrauded the Copyright Office upon obtaining the Registration.

**B.    DEFENDANT COPIED THE PHOTOGRAPH WITHOUT AUTHORIZATION**

To satisfy the second element of an infringement claim, a plaintiff must show both that his work was "actually copied" and that the portion copied amounts to an "improper or unlawful appropriation."  *Castle Rock*, 150 F.3d at 137 (citations omitted).

Here, Defendant does not deny that it actually copied the Photograph and displayed it on its Website. *See Otto*, 345 F.Supp.3d at 425 (finding actual copying took place where "the parties do not contest the fact that Hearst actually copied Otto's photograph for its use in the Esquire Article, nor that the works are substantially similar because they are the same photograph.") Moreover, the works are strikingly similar because the Photograph published as part of the Infringing Article is identical to Plaintiff's photograph. *See, e.g., Gal v. Viacom Intern., Inc.*, 518 F.Supp.2d 526, 537 (S.D.N.Y. 2007) ("Striking similarity exists when two works are so nearly alike that the only reasonable explanation for such a great degree of similarity is that the later was copied from the first."); *Miroglio S.P.A. v. Conway Stores, Inc.*, No. 5-cv-00121 (BSJ), 2007 WL 391565, *6 (S.D.N.Y. Feb. 6, 2007) (finding that "no reasonable juror could fail to find that the defendants committed acts of copying" where the works at issue were "nearly identical").

Further, Defendant did not have Plaintiff's permission or consent to publish the Photographs [Am. Compl. ¶ 17]  As such, Defendant violated Plaintiff's rights under section 106 of the Copyright Act because Defendant's actual copying amounted to "an improper and unlawful appropriation." *Castle Rock*, 150 F.3d at 137; *see also Otto*, 345 F.Supp.3d at 425 ("The parties do not dispute Hearst did not have Otto's permission to use the Photograph, making the appropriation unlawful.")  In sum, Plaintiff has set forth a valid claim for copyright infringement claim on the face of the pleadings.  If Defendant wants to show that some other third party owns the copyright, then discovery will be necessary.

**POINT III:    THE FAIR USE DEFENSE SHOULD BE DISMISSED AS FRIVOLOUS**

A court "may conclude as a matter of law that the challenged use does not qualify as a

fair use of the copyrighted work." *Harper & Row v. Nation Enterprises*, 471 U.S. 539, 560

(1985). Thus, the Court may grant summary judgment dismissing the fair use defense. *See, e.g.,*

*Stewart v. Abend*, 495 U.S. 207 (1990); *Castle Rock*, 150 F.3d at 137; *Otto* 345 F.Supp.3d at 433.

As set forth below, examination of the statutory factors demonstrates that Defendant's secondary

use of the Photographs does not constitute fair use.[1]

## A.    THE FIRST FACTOR WEIGHS HEAVILY AGAINST FAIR USE

The first factor under 17 U.S.C. § 107(1), which addresses the manner in which the

copied work is used, is the "heart of the fair use inquiry." *Blanch v. Koons*, 467 F.3d 244, 251

(2d Cir. 2006). Courts examine at least two sub-factors to determine the purpose and character

of use, including whether the secondary use is (1) transformative; and (2) for commercial

purposes. *See NXIVM Corp. v. Ross Inst.*, 364 F.3d 471, 478 (2d Cir. 2004).

## (1)    Defendant's Secondary Use is NOT Transformative

The fair use doctrine "allows for new transformative works that further the public

discourse and the free exchange of ideas in order to promote science and the arts." *See Campbell*

*v. Acuff– Rose Music, Inc.*, 510 U.S. 569, 579 (1994). The central purpose of the inquiry is to

determine whether "the new work merely supersedes the objects of the original creation, or

instead adds something new, with a further purpose or different character, altering the first with

new expression, meaning, or message." *Ringgold v. Black Entertainment Television, Inc.*, 126

3d 70, 79 (2d Cir. 1997) (citations omitted).

---

[1] Section 107 of the Copyright Act sets out four factors to consider in determining whether a defendant's use of a copyrighted work is a fair use. These are "(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107.

As demonstrated below, Defendant's use was not transformative because Defendant

did not report on any political or social controversy that arose because of the very existence of

the Photograph itself.  Nor did the Infringing Article transform the original purpose of use or

message behind the Photograph.  Defendant merely used the Photograph to illustrate a

descriptive news story about the U.S.-Mexico border [Am Compl. ¶ 16]

### (a) The Newsworthiness of the Photograph is <u>Not</u> Dispositive

Defendant argues that its use of the Photograph is fair because it was contained within a

news report. The preamble to the fair use statute does list "news reporting" as an illustrative

basis supporting fair use under this factor.  17 U.S.C. § 107.  However, as per the Supreme

Court, "[t]he promise of copyright would be an empty one if it could be avoided merely by

dubbing the infringement a fair use 'news report' of the [work]." *Harper & Row v. Nation*

*Enterprises*, 471 U.S. 539, 557 (1985).[2]

In *Barcroft Media, Ltd. v. Coed Media Group, LLC*, No. 16-cv-7634 (JMF), 2017 WL

5032993 (S.D.N.Y. Nov. 2, 2017), the court explained that the preferential treatment accorded to

"news reporting" under the preamble to Section 107 only applies to news reporting of the

copyrighted work itself; <u>not</u> news reporting about the subject matter depicted in the image.

*Barcroft,* 2017 WL 5032993 at *6 ("CMG is correct in noting that the preamble of Section

---

[2]  *See also Swatch Group Management Services Ltd. v. Bloomberg L.P.*, 756 F.3d 73, 85 (2d Cir. 2014) ("A news organization thus may not freely copy creative expression solely because the expression itself is newsworthy."); *Murphy v. Millennium Radio Grp. LLC*, 650 F.3d 295, 307 (3d Cir. 2011) ("News organizations are not free to use any and all copyrighted works without the permission of the creator simply because they wish to report on the same events a work depicts."); *Psihoyos v. National Examiner*, No. 97-cv-7624 (JSM), 1998 WL 336655, *3 (S.D.N.Y. June 22, 1998) ("The mere fact the photo depicts a newsworthy item does not justify commercial exploitation of it.").

107 carves out categories of reproduction that are likely to constitute fair use, but it is incorrect in asserting that its use of the Images fell within one of those categories. Display of a copyrighted image or video may be transformative where the use serves to illustrate criticism, commentary, or a news story *about that work*.") (italics added).[3]

#### (b)    The Infringing Article is Purely Descriptive and Did Not Report on Any Controversy that Arose Because of the Photograph Itself

In the context of news reporting, a photograph may be transformed where "the copyrighted work is itself the subject of the story, transforming the function of the work in the new context." *Barcroft*, 2017 WL 5032993, at *6.  Thus, "a depiction of a controversial photograph might fairly accompany a work of commentary or criticism about the artistic merit or appropriateness of the photograph." *Id.* (*citing Nunez v. Caribbean Int'l News Corp.*, 235 F.3d 18, 25 (1st Cir. 2000) (fair use found where salacious photographs of Miss Puerto Rico Universe were published by newspaper to comment on the political controversy surrounding the existence of the photographs and their impact on the beauty queen's qualifications to retain the crown); *Konangataa v. Am. Broadcasting Companies, Inc.,* No. 16-CV-7382 (LAK), 2017 WL 2684067, at *1 (S.D.N.Y. June 21, 2017) (fair use found where publishers reported on social controversy surrounding a father's lack of discretion in posting a live-streaming video that graphically depicted the birth of his child)).[4]

---

[3] *Accord Gossip Cop*, 196 F. Supp. 3d at 406 n.6 ("Defendant confuses the situation in which the photograph is the story . . . and the scenario present here, in which the contents of the photograph are of some public interest . . . ); *Hirsch v. Complex Media, Inc.*, No. 18-cv-5488 (CM), 2018 WL 6985227, at *6 (S.D.N.Y., December 10, 2018) ("Complex has not established that its Video did anything more than merely describe the subject of Hirsch's Photograph, newsworthy or not. That conduct alone does not suffice as transformative.").

[4] The reason why *Nunez* and *Konangataa* constitute fair use is because the media publisher in each case reported on a political or social controversy that arose because of the copyrighted photograph.  *Accord Otto*, 345 F.Supp.3d at 428.

In contrast, no transformation exists where the image is merely used "as [an] illustrative aid[]" to depict the subjects described in the news article. *See, e,g.*, *Barcroft,* 2017 WL 5032993, at *6 ("CMG's articles did not comment on, criticize, or report news *about the Images themselves*; instead, they used the Images as illustrative aids because they depicted the subjects described in its articles. CMG's argument, if accepted, would eliminate copyright protection any time a copyrighted photograph was used in conjunction with a news story about the subject of that photograph. That is plainly not the law.").[5]

Here, like the cases in *Otto*, *Barcroft*, *Gossip Cop* and *Psihoyos* where fair use was rejected, Defendant used the Photograph to merely illustrate a news story about the subject matter depicted in the image. [Am Compl. ¶ 16]   On its face, Defendant's article does nothing more than describe the subject matter depicted in the Photograph [*Id.*].[6]

### (c)    Defendant Has <u>Not</u> Transformed the Original Intended Use of the Photograph; Nor Altered Its Meaning

"[U]se of copyrighted material that 'merely repackages or republishes the original is unlikely to be deemed a fair use' and a 'change of format, though useful' is not transformative." *Associated Press v. Meltwater U.S. Holdings*, 931 F.Supp.2d 537, 551 (S.D.N.Y. 2013) (*quoting Infinity Broadcast Corp. v. Kirkwood*, 150 F.3d 104, 108 & n. 2 (2d Cir. 1998) (citation omitted)).  A secondary use has "no transformative effect [where the

---

[5]  *See also Gossip Cop*, 196 F.Supp. at 404-405 (not transformative where the secondary use of "photograph seems intended as a general illustration of the [celebrity] couple . . . [and] Defendant [does not] comment or report on the images in question . . .); *Psihoyos*, 1998 WL 336655, *3 (defendant's "use is not transformative, because its piece uses the photo to show what it depicts."); *Otto*, 2018 WL 6510801, *8 ("the use of an image solely to illustrate the content of that image, in a commercial capacity, has yet to be found as fair use in this District.")

[6] Unlike the cases in *Nunez* and *Konangataa,* where the publishers reported on a public controversy sparked by the very existence of the images, Defendant here failed to offer any commentary or criticism directed at the copyrighted work at issue.  The Infringing Article merely reports on what the Photograph depict.  Accordingly, there can be no transformative effect as a matter of law.

article] display[s] the Images in the same manner and for the same purpose as they were originally intended to be used." *Barcroft Media,* 2017 WL 5032993, at *6; *see also Psihoyos,* 1998 WL 336655 at *3 (rejecting fair use defense where purpose of secondary use was to display it "for precisely a central purpose for which it was created").

Here, the Photograph depicts what the U.S.-Mexico border looks like. [Am. Compl. ¶ 11]  Plaintiff created the Photograph for the purpose of licensing to news outlets and media organizations. [Am. Compl. ¶ 13]  Likewise, the Infringing Article used the Photograph for the same exact purpose: a news report about the U.S.-Mexico border [Am. Compl. ¶ 16]

Further, Defendant did not transform the original meaning behind the Photograph, which shows what the U.S.-Mexico border looks like. *See Otto,* 345 F.Supp.3d at 426 ("It would be antithetical to the purposes of copyright protection to allow media companies to steal personal images and benefit from the fair use defense by simply inserting the photo in an article which only recites factual information—much of which can be gleaned from the photograph itself.").

**(2)   Defendant's Use is Commercial Rather Than Non-Profit**

The fact that Defendant used the Photograph for a commercial rather than a non- profit purpose also weighs against a finding of fair use.  *Psihoyos*, 1198 WL 336655, at *3 (*citing Campbell*, 510 U.S. at 583-84).  The "crux of the profit/nonprofit distinction is . . . whether the user stands to profit from the exploitation of the copyrighted material without paying the customary price." *Harper & Row*, 471 U.S. at 562.  Here, there can be no dispute that Defendant is a for-profit publisher which disseminates commercial news content on its website. [Am Compl. ¶¶ 9-10]

**B.   THE SECOND FACTOR WEIGHS AGAINST FAIR USE**

16

The second factor examines the "nature of the copyrighted work." 17 U.S.C. § 107(2). Courts consider "(1) whether the work if expressive or creative, with a greater leeway being allowed a claim of fair use where the work is factual or information, and (2) whether the work if published or unpublished." *Blanch*, 467 F.3d at 256.  "Photographic images of actual people, places and events may be as creative and deserving of protection as purely fanciful creations." *Monster Communications, Inc. v. Turner Broadcasting*, 935 F.Supp. 490, 494 (S.D.N.Y. 1996).

Here, the Photograph is creative in nature as it is  the product of a professional photographer with many years experience in licensing his photographs to the media. Moreover, in creating the Photograph, Plaintiff exercised a personal and creative choice in the selection of camera equipment, wide angle lens, perspective, angle, lighting and exposure.   [Am Compl. ¶ 12]  Plaintiff's original take on the subject matter renders the images "as creative and deserving of protection as purely fanciful creations." *Monster Comm.,* 935 F.Supp. at 494.

C.     THE THIRD FACTOR WEIGHS AGAINST FAIR USE BECAUSE DEFENDANT
       PUBLISHED A FULL-COLOR, FULL-SCALE REPRODUCTION OF THE IMAGE
       WITHOUT ALTERATION

The third factor bearing on fair use is "the amount and substantiality of the portion used in relation to the copyrighted work as a whole."  17 U.S.C. § 107(3).  The question is whether "the quantity and value of the materials used are reasonable in relation to the purpose of the copying." *Campbell*, 510 U.S. at 586.  The Court should consider whether the portion taken is "essentially the heart" of the copyrighted expression.  *NXIVM Corp.*, 364 F.3d at 480 (citation omitted).  The "most relevant" question for this factor is whether the infringer has taken "no more" than is necessary.  *Infinity Broadcast Corp.*, 150 F.3d at 110.  "[T]he more of a copyrighted work that is taken, the less likely the use is to be fair." *Id.* at 109.

17

As a quantitative matter, Defendant has taken the entire full-color Photograph and displayed it in full-scale. [Am Compl. ¶ 16]  This fact alone weighs against fair use.  *See Associated Press*, 931 F.Supp.2d at 558 ("appropriation of a copyrighted work in its entirety weighs against a finding of fair use").  As a qualitative matter, Defendant has used more of the copyrighted work than was necessary to accomplish its purpose of news reporting.  *See Rogers*, 960 F.2d at 311.  The Photograph was reproduced by Defendant in full color without any visible modification or alteration.  [Am Compl. ¶ 16]  Defendant's wholesale reproduction of the Photograph, without any aesthetic alteration, demonstrates the works' qualitative value.  *See Harper & Row*, 471 U.S. at 565 ("the fact that a substantial portion of the infringing work was copied verbatim is evidence of the qualitative value of the copied material, both to the originator and to the plagiarist who seeks to profit from marketing someone else's copyrighted expression.").

**D.**    **THE FOURTH FACTOR WEIGHS AGAINST FAIR USE BECAUSE THERE WAS ACTUAL MARKET HARM AS WELL AS HARM TO THE POTENTIAL MARKET**

The final fair use factor considers "the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107(4).[7]  As demonstrated below, Defendant's secondary use impaired both the actual and potential market for the Photograph.

As a threshold matter, the Court may presume market harm because Defendant's secondary use constituted a mere duplication of Plaintiff's original photograph.  *See Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417, 450 (1984) (holding that "every commercial use of copyrighted material is presumptively an unfair exploitation of the

---

[7] This factor "requires courts to consider not only the extent of market harm caused by the particular actions of the alleged infringer, but also whether unrestricted and widespread conduct of the sort engaged in by the defendant would result in a substantially adverse impact on the potential market for the original." *Ringgold*, 126 F.3d at 80-81 (*citing Campbell*, 510 U.S. at 590 (quotation omitted)).

monopoly privilege that belongs to the owner of the copyright").  "A presumption of market harm "makes common sense[ ] when a commercial use amounts to mere duplication of the entirety of an original." *Campbell*, 510 U.S. at 591.[8]

Defendant's secondary use impairs the actual market for the Photograph because there was a fully functioning market demand for Plaintiff's work.  [Am. Compl. ¶ 13]  *See Associated Press*s, 931 F.Supp.2d at 559 ("Where there is a fully functioning market for the infringer's use of the copyrighted material, it will be difficult for the infringing party to show that it made fair use without paying a licensing fee") (*citing Harper & Row*, 471 U.S. at 566 n. 9).

Defendant's unauthorized use clearly supplanted the market in which Plaintiff had a reasonable expectation to earn licensing revenue.  *See, e.g., Fitzgerald v. CBS Broadcasting*, 491 F.Supp.2d 177, 189 (D. Mass. 2007) ("CBS's use of the photographs is paradigmatic of the only market the photographs could reasonably have: licensing to media outfits"); *Otto*, 345 F. Supp. 3d at 432 ("Publishing the Photograph without permission essentially destroys the primary market for its use.").  Defendant's secondary use also impairs the potential market for the Photograph because "unrestricted and widespread conduct of the sort engaged in by the defendant . . . would result in the substantially adverse impact on the potential market for [licensing of] the original." *Campbell*, 510 U.S. at 590 (internal quotation omitted).[9]

---

[8] Further, under *Sony,* "there is a presumption of market harm [where] Defendant's use of [] photographs were not transformative."  *Ferdman v. CBS Interactive, Inc.*, 17-cv-1317 (PGG), 2018 WL 4572241, *19 (S.D.N.Y. Sept. 21, 2018).  Here, because Defendant's use constituted a mere duplication of Plaintiff's unaltered Photograph and was wholly untransformative, *Sony's* presumption of market harm applies.

[9] "Under section 107, 'potential market' means either an immediate or a delayed market, and includes harm to derivative works."  *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 845 (11th Cir.1990); *see also Otto* at *12 ("Because the images are nearly identical, Defendant's unauthorized publication impacts the market for the work - simply put, more supply, less demand.  If the practice of using photographs without licensing were to become widespread, 'the market for such images would diminish correspondingly: [i]f media outlets could use such images for free, there would be little or no reason to pay for works.'  *Barcroft*, 297 F.Supp.3d at 355.")

In sum, all four factors weigh heavily against Defendant and thus the affirmative defense of fair use dense should be dismissed as a matter of law.

## POINT IV:    THE DE MINIMIS DEFENSE FAILS

Defendant also argues that its use was trivial.  However, the *de minimis* defense is objectively unreasonable because the Photograph as used on Defendant's Website is a full-color reproduction, readily observable to the casual viewer, and material to the subject infringing news article.

The *de minimis* analysis asks whether the copying is both quantitatively and qualitatively sufficient to support the legal conclusion that infringement, i.e., actionable copying, has occurred.  *Ringgold v. Black Entm't Television, Inc.*, 126 F.3d 70, 74–75 (2d Cir. 1997). The qualitative component concerns the degree of similarity between the two works, focusing on "whether an average lay observe would recognize the alleged copy as having been appropriated form the copyrighted work." *Knitwaves, Inc. v. Lollytogs Ltd. (Inc.)*, 71 F.3d 996, 1002 (2d Cir. 1995)  (internal quotation marks, citation, and alterations omitted). "The quantitative component generally concerns the amount of the copyrighted work that is copied, a consideration that is especially pertinent to exact copying." *Ringgold*, 126 F.3d at 75  (internal citation omitted). Where, as here, exact copying is at issue, courts should look to the "observability" of the copied work, which, in turn, depends upon "the length of time the copied work is observable in the allegedly infringing work and such factors as focus, lighting, camera angles, and prominence." *Id.*

––––––––––––––––––––––––––

Here, there can be no serious dispute as to the qualitative similarity between the Plaintiff's photograph and Defendant's infringing news article: the Defendant's article incorporates an exact screenshot of the Photograph and would be plainly recognizable to a lay observer as it was permanently affixed to the Defendant's website in conspicuous view. *See, e.g., Dyer v. V.P. Records Retail Outlet, Inc.,* No. 05 Civ. 6583 (WHP), 2008 WL 2876494, at *4 (S.D.N.Y. July 24, 2008) (denying summary judgment on grounds of *de minimis* copying for shots in which offending images "take up most of the screen" for "almost three seconds"); *Twentieth Century Fox Film Corp. v. Marvel Enterprises, Inc.,* 155 F. Supp. 2d 1, 46 (S.D.N.Y. 2001), *remanded on other grounds,* 277 F.3d 253 (2d Cir. 2002) (finding likelihood that prominent display of several copyrighted clips, which each lasted less than three seconds, was not *de minimis*) *[See Complaint, Dkt. #1-3]*

In a quantitative sense, Defendant's use of the Photograph cannot possibly be "trivial" as it is material to the news story. In other words, Defendant consciously selected the Photograph to illustrate a news story which quotes the subject matter depicted in the Photograph. Indeed, Defendant's Infringing Article is entitled "This is What the U.S.-Mexico Border Wall Actually Looks Like" and then displays Plaintiff's Photograph directly below the headline. Given the material nature of Defendant's copying, the *de minimis* defense fails as a matter of law. *See, e.g, Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.*, 307 F.3d 197, 208 (3d Cir. 2002) ("[a] de minimis defense does not apply where the *qualitative* value of the copying is material."); *Nihon Keizai Shimbun, Inc. v. Comline Bus. Data, Inc.,* 166 F.3d 65, 71–72 (2d Cir. 1999) ("the quantitative analysis of two works must always occur in the shadow of their qualitative nature.").

21

**POINT V:      ANY SERVICE DEFECT CAN BE READILY CURED AND DOES NOT REQUIRE DISMISSAL**

Finally, Defendant argues that the summons and complaint were not properly served, even though Defendant has appeared to defend the action and has already filed two motions to dismiss.

In the event the Court finds any technical defect with service of process, Plaintiff respectfully requests a period of twenty-one (21) days to re-effectuate service of process upon the Defendant.

**CONCLUSION**

For the foregoing reasons, Defendant's motion to dismiss the Amended Complaint should be DENIED.  Further, in the event the Court dismisses the Amended Complaint, Plaintiff respectfully requests leave of Court to file a Second Amended Complaint to cure any pleading deficiencies.

Respectfully Submitted,
LIEBOWITZ LAW FIRM, PLLC

by: **/richardliebowitz/**
Richard Liebowitz
11 Sunrise Plaza, Suite 305
Valley Stream, NY 11580
(516) 233-1660
rl@liebowtizlawfirm.com

*Counsel for Plaintiff*